UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GREGORY A. FIGEL,

                Plaintiff,

v.

LOGAN MCNEES et al.,

                Defendants.

_____/

Case No. 1:23-cv-1039

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full filing fee.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.62.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case. . . ." 28

U.S.C. § 636(c).   Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.   28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).   The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.   *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).   Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim against Defendants Betke, Keough, Morgan, Bennett, Henry, Salinas, and Cassell.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff's state law claims against these Defendants will be dismissed without prejudice to Plaintiff's ability to raise his claims in the state courts. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: official capacity claims for monetary relief, First Amendment claims for violation of Plaintiff's right to free exercise of religion and access to the Courts, First Amendment retaliation claims premised upon a March 2023 plot to retaliate against Plaintiff, violation of the Religious Land Use and Institutionalized Person Act (RLUIPA), Eighth Amendment claim of unconstitutional conditions of confinement regarding "black water" in Plaintiff's toilet and sink, the denial of medical care, and for failure to protect premised upon the decision to assign Defendants McNees and Kaliszewski to unit 5, Fourteenth Amendment procedural and substantive due process claims, and Plaintiff's claims of conspiracy. The Court will allow Plaintiff to proceed on his claims of First Amendment retaliation against Defendants McNees, Kaliszewski, Franz, Newland, Wood, Jones, Bledsoe, Sikkema, Sandborn, Davids, Lafler, Pattinson, Hengesbach, Oversmith, Dunnigan, Kerr, Bonn, and Davids, First Amendment interference with Plaintiff's outgoing mail against Defendant Hengesbach, and Eighth Amendment failure to protect against Defendant McNees for paying another prisoner to attack Plaintiff and against Defendants Kerr, Hengesbach, Dunigan, Bonn and Davids related to their decision to transfer Plaintiff to AMF, and Plaintiff's supplemental state law claims against these remaining Defendants.

**Discussion**

## I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.  The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF staff: Corrections Officers Logan McNees, Unknown Kaliszewski, Unknown Franz, Kevin Newland, Unknown R. Wood, Unknown Betcke, Unknown Keough, Unknown G. Lafler, and Unknown Pattison; Registered Nurses Unknown Sikkema and Unknown Jones; Prison Counselors Trent Hengesbach and Unknown Sanborn; Resident Unit Manager Unknown B. Oversmith; Sergeants Unknown Bledsoe , Unknown Morgan, and Unknown Kerr; Lieutenant Unknown Bennett; Captain Unknown R. Henry; Lieutenant/Inspector Unknown Salinas; Inspector/Assistant Deputy Warden Unknown Cassel; Assistant Deputy Warden Unknown J. Dunigan; Deputy Warden Dale Bonn; and Warden John Davids. Plaintiff sues each Defendant in his or her individual and official capacities.

Plaintiff alleges that Defendants engaged in a campaign of harassment toward Plaintiff after Plaintiff reported misconduct by Defendants McNees and Kaliszewski. Plaintiff asserts that, in December 2022, Plaintiff provided two memoranda detailing the misconduct of Defendants McNees and Kaliszewski to non-party Corrections Officer Floyd and Defendant Kerr, which were then given to Captain Kelley and Defendant Bonn.  (ECF No. 1, PageID.15–16; ECF Nos. 1-1, 1-2.)  The information

detailed in the memoranda was found to be substantiated and led to the removal of Defendants McNees and Kaliszewski from housing unit 4. (ECF No. 1, PageID.16.)

Following the discipline of Defendants McNees and Kaliszewski, Defendant McNees asked Prisoner Beck to attack Plaintiff. (*Id.*) On January 2, 2023, Defendants McNees and Kaliszewski were found with weapons in their staff lockers. (*Id.*)

Plaintiff also learned that Defendants McNees and Kaliszewski were trying to get a staff member to "set [Plaintiff] up, put him in segregation, and get him fired from his job" in retaliation for the memoranda. (*Id.*, PageID.17.) Thereafter, on December 31, 2022, and January 2, 2023, Defendants Franz, Newland, and Wood issued Plaintiff false misconducts for which Plaintiff was later found not guilty. (*Id*, PageID.17–19; ECF Nos. 1-3, 1-4, 1-5, 1-6).

On December 31, 2022, Plaintiff was placed in segregation because of the various misconduct reports, and Plaintiff's cotton blankets were confiscated. (ECF No. 1, PageID.20, 21.) Plaintiff informed Defendant Jones that he was allergic to wool, with a medical detail for the past 30 years, but Defendant Jones refused to provide Plaintiff with cotton blankets, requiring Plaintiff to endure an allergic reaction that "made [Plaintiff's] throat swell almost entirely closed." (*Id.*, PageID.20; ECF No. 1-7, PageID.99.) Defendants Jones also refused to provide Plaintiff with medical care for a "possible broken toe" because of Plaintiff's complaints against ICF staff. (ECF No. 1, PageID.22; ECF No. 1-13, PageID.142.)

Upon his entrance into segregation on December 31, 2022, Plaintiff's eyeglasses and other items of personal property were confiscated by Defendant Wood. (ECF No. 1, PageID.21; ECF No. 1-8, PageID.106.)  When Plaintiff's eyeglasses were returned to Plaintiff by Defendant Bledsoe, they were badly scratched.  (ECF No. 1, PageID.21; ECF No. 1-10, PageID.121.)  Defendant Wood also damaged Plaintiff's tv and typewriter during Plaintiff's stay in segregation.  (ECF No. 1, PageID.21; ECF No. 1-11, PageID.128.)

On January 8, 2023, Defendant Sikkema made copies of Plaintiff's medical records and provided them to Defendant Wood.  (*Id.*, PageID.20; ECF No. 1-9, PageID.113.)  Defendants Wood and/or Sikkema altered Plaintiff's records and used them to support the misconduct against Plaintiff for destruction/misuse of property. (ECF No. 1, PageID.20.)

Plaintiff was found not guilty of a falsified misconduct on January 11, 2023. (*Id.*, PageID.21.)  Per policy, Plaintiff should have been returned to his housing unit and his privileges reinstated; however, Defendant Sanborn refused to return Plaintiff to his housing unit or his job, denying Plaintiff access to his unit 4 Seventh Day Adventist religious groups.  (*Id.*)

On January 19, 2023, Defendant McNees told Plaintiff that each of the preceding actions was done in retaliation for Plaintiff's complaints about prison staff. (*Id.*, PageID.17–18, 22; ECF No. 1-14, PageID.145.)  And, on February 25, 2023, Defendant Franz told Plaintiff that she issued Plaintiff a false misconduct in

retaliation for Plaintiff's complaints against Defendants McNees and Kaliszewski;
she then refused to connect Plaintiff's video visit.  (*Id.*, PageID.23.)

On or before March 1, 2023, Defendant Bennett assigned Defendants McNees
and Kaliszewski to work together in unit 5, where Plaintiff was housed.  (*Id.*)  Plaintiff
informed Defendants Morgan, Henry, and Davids of this issue, but they did not
correct the problem.  (*Id.*)  Then, on March 6, 2023, Plaintiff was informed that
Defendants McNees, Kaliszewski, Keough, and Betcke were planning to retaliate
against Plaintiff.  (*Id.*, PageID.23–24.)  That unidentified "plot" was "verified" on
March 10, 2023, and Plaintiff was removed from unit 5 before the plot could be carried
out.  (*Id.*, PageID.24.)

On March 13, 2023, Defendant Hengesbach denied Plaintiff's request for legal
supplies, telling Plaintiff that he could not verify that Plaintiff was on the indigent
list.  (*Id.*; ECF No. 1-19.)  Plaintiff claims that this made "no sense" because he
believes that all prison counselors receive a monthly indigent list.  (ECF No. 1,
PageID.24.)  Plaintiff complained of Defendant Hengesbach's actions to Defendants
Dunnigan, Bonn, and Davids, but they did not correct the same.  (*Id.*)

Again, in March 2023, Plaintiff requested legal supplies from Defendant
Hengesbach.  (*Id.*, PageID.26; ECF Nos. 1-19, 1-22.)  This time, Defendant
Hengesbach told Plaintiff that Plaintiff was only allowed legal supplies once monthly
per order by Defendants Oversmith and Davids.  (*Id.*)  Plaintiff claims that Defendant
Hengesbach told Plaintiff that he was being denied legal supplies to try to stop
Plaintiff from filing any more complaints about staff.  (*Id.*)  Plaintiff informed

Defendants Oversmith, Dunigan, Bonn, and Davids of the problem, but they refused to correct it.  (*Id.*)

In January, February, and March 2023 (ECF No. 1-20, PageID.180), Plaintiff had "numerous conversations" with Defendants Salinas, Cassel, Dunigan, Bonn and Davids about the instances of alleged retaliation by ICF staff.  (ECF No. 1, PageID.25.)  Defendants Salinas and Cassel reported that Defendant Davids told them not to get involved because of Plaintiff's prior complaints about staff.  (*Id.*)  Plaintiff alleges that none of the foregoing Defendants intervened or took any disciplinary action against the perpetrators of the retaliation.

On May 9, 2023, Defendant Hengesbach attempted to recruit other prisoners to run for election against Plaintiff for the "white block rep position" because of Plaintiff's prior complaints about staff.  (*Id.*; ECF No. 1-23.)  The following day, Defendant Lafler told Plaintiff that staff would be confiscating Plaintiff's television because of Plaintiff's complaints about staff, per order of Defendant Davids.  (ECF No. 1, PageID.27–28; ECF No. 1-25.)

Beginning May 11, 2023, and lasting "several days," Plaintiff was forced to stay in a cell flooded with urine and feces without cleaning supplies or protective equipment and with the understanding that the prisoner in the cell causing the flooding may be HIV or Hepatitis C-positive.  (*Id.*, PageID.28; ECF No. 1-26.)  When Plaintiff reported this to Defendant Hengesbach on May 12, 2023, Defendant Hengesbach responded, "If you have to clean up shit water all weekend you won't have time to file anymore [sic] complaints and that's good for us."  (*Id.*)

On May 12, 2023, Defendant Hengesbach told Plaintiff that he was being denied the white prisoner representative position because he had not been free of misconducts for five months.  (ECF No. 1, PageID.29; ECF No. 1-27, PageID.221.) Plaintiff asked Defendants Hengesbach, Oversmith, and Dunigan to waive the requirement, which was permitted under MDOC policy, but they refused.  (*Id.*) Defendant Hengesbach told Plaintiff that they did not want Plaintiff to be able to file more complaints.  (*Id.*)

On May 16, 2023, Plaintiff woke up to find "black water in his toilet and sink that would not go down."  (*Id.*, PageID.29; ECF No. 1-28, PageID.229.)  Plaintiff was given a plunger and cleaning supplies and was able to unplug the sink and toilet; however, when Plaintiff began to clean the "black sewage water" from the sink, toilet, floor, and walls, Defendant Newland came to ask for a shakedown.  (*Id.*)  Defendant Newland told Plaintiff that he was performing the shakedown at the direction of Defendant Dunigan because of Plaintiff's complaints about staff.  (ECF No. 1, PageID.30.)   During the shakedown, Defendant Newland confiscated items of Plaintiff's property and a "legal file containing litigation notes about PC Hengesbach."  (*Id.*; ECF No. 1-28, PageID.231.)

Also on May 16, 2023, Defendant Newland issued Plaintiff a false misconduct report, for which Plaintiff was later found not guilty.  (*Id.*, PageID.26–27.)  Defendant Newland told Plaintiff that Defendant Hengesbach and Defendant Dunigan had instructed Defendant Newland to issue Plaintiff misconducts, shake him down, and

take his legal supplies to block Plaintiff from being elected as the representative because of Plaintiff's prior complaints about staff.  (*Id.*, PageID.27.)

On May 24, 2023, Plaintiff learned that Defendant Hengesbach had confiscated items of Plaintiff's outgoing mail that Plaintiff had addressed to outside public officials.  (*Id.*, PageID.30; ECF No. 1-29, PageID.237.)  Defendants Davids, Lafler, and Pattison also confiscated Plaintiff's television on May 29, 2023, without written notice or a hearing.  (ECF No. 1, PageID.30; ECF No. 1-30, PageID.244.)

Also on May 29, 2023, Plaintiff "was packed up for a transfer." (*Id.*, PageID.32.) Defendant Kerr told Plaintiff "Figel, Hengesbach wanted me to tell you that your paralegal activities and complaints about ICF staff, got you a one[-]way ticket to Baraga, where your nemesis Beck is at.  If you get stabbed or killed we'll hear about it." (*Id.*, PageID.32.) Defendants Kerr, Hengesbach, Dunigan, Bonn and Davids were responsible for the transfer decision. (*Id.*, PageID.7.) When Plaintiff arrived at AMF, Plaintiff reported his concerns about Prisoner Beck to AMF staff.  (*Id.*, PageID.32.) AMF RUM Nurkala contacted Defendant Bonn, who acknowledged that Plaintiff had reported his fears to Bonn while at ICF but that no Special Problem Offender Notice (SPON) was ever entered because the official investigation had not been completed due to Beck's transfer.  (*Id.*)  RUM Nurkala was unable to transfer Plaintiff from AMF.  (*Id.*, PageID.33.)

Based upon the foregoing factual allegations, Plaintiff seeks compensatory and punitive damages, and declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff identifies the following federal claims within his complaint: "First Amendment Retaliation Claim" (ECF No. 1, PageID.34), "First Amendment Free Exercise of Religion Claim" (*id.*, PageID.36), "Violation of the Religious Land Use and Institutionalized Person Act (RLUIPA)" (*id.*, PageID.38), "Eighth Amendment Cruel and Unusual Punishment Claim" (*id.*, PageID.40), " Eighth Amendment Deliberate Indifference Claim" (*id.*, PageID.42), "Fourteenth Amendment Procedural Due Process Claim" (*id.*, PageID.44), and "Fourteenth Amendment Substantive Due Process Claim" (*id.*, PageID.46), as well as several tort claims brought under Michigan state law (*id,*, PageID.49–60).  The Court will also liberally construe Plaintiff's complaint to raise First Amendment claims for violation of Plaintiff's right to access to the courts and interference with Plaintiff's outgoing mail, and a claim under § 1983 for civil conspiracy.  The Court will address each of Plaintiff's claims in turn.

## A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities.  A suit against an individual in his or her official capacity is equivalent to a suit against the

governmental entity; in this case, the MDOC.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks damages, as well as injunctive and declaratory relief. Official capacity defendants, however, are absolutely immune from monetary damages.  *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998).  Therefore, the Court, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.[2]

---

[2] An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive

**B.     Claims Against Defendants Morgan, Henry, and Salinas, and Cassel**

Plaintiff's only claims against Defendants Morgan and Henry are that Plaintiff informed these Defendants that Defendants McNees and Kaliszewski had been assigned to Plaintiff's housing unit, but Defendants Morgan and Henry did not correct the problem.  (ECF No. 1, PageID.23.)  As against Defendants Salinas and Cassel, Plaintiff claims only that he had conversations with these Defendants about alleged instances of retaliation, but that they did not take any action per instruction from Defendant Davids.  (*Id.*, PageID.25.)  Plaintiff's allegations against Defendants Morgan, Henry, Salinas, and Cassel are insufficient to give rise to personal liability under § 1983.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor

---

relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Arguably, Plaintiff's requests for the return or repair of his property, treatment for his damaged toe and HIV/HEP-C, and his transfer back constitute prospective injunctive relief. It is questionable, however, whether Plaintiff alleges "an ongoing violation of federal law" against these Defendants. At this preliminary stage, however, the Court will not dismiss Plaintiff's requests for injunctive relief against Defendants in their official capacities.

can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff alleges only that Defendants Morgan, Henry, Salinas, and Cassel failed to act.  Plaintiff does not allege any facts suggesting that these Defendants encouraged or condoned misconduct by any subordinate, or authorized,

16

approved, or knowingly acquiesced in any alleged misconduct that could be said to have caused a violation of Plaintiff's constitutional rights.  Accordingly, the Court will dismiss Plaintiff's claims against Defendants Morgan, Henry, Salinas, and Cassel.

### C.   First Amendment Claims

#### 1.   Retaliation

Plaintiff makes numerous allegations concerning First Amendment retaliation.[3]  He alleges that, in December 2022, Plaintiff created two memoranda detailing misconduct by Defendants McNees and Kaliszewski.  (ECF No. 1, PageID.15–16.)  Thereafter, Defendants McNees and Kaliszewski attempted to frame Plaintiff for stealing scissors, tried to get other staff members to put Plaintiff in segregation and get Plaintiff fired from his job, and Defendant McNees asked another prisoner to assault Plaintiff.  (*Id.*)  Defendant McNees also told Plaintiff that various actions by other Defendants were also acts of retaliation in response to Plaintiff's complaints against Defendants McNees and Kaliszewski, including: Defendants Franz, Newland, and Wood issuing Plaintiff false misconducts (*id.*, PageID.17–19), Defendant Jones refusing to provide Plaintiff with a cotton blanket or medical care for a broken toe (*id.*, PageID.20–22), Defendant Wood taking Plaintiff's eyeglasses, television, and typewriter (*id.*, PageID.21), Defendant Bledsoe returning Plaintiff's eyeglasses badly scratched (*id.*), Defendants Wood and Sikkema altering Plaintiff's

---

[3] Within his various constitutional claims, Plaintiff lists acts by Defendants that Plaintiff describes "acts of retaliation." Because Plaintiff's claims of retaliation are properly characterized as claims for violation of Plaintiff's First Amendment rights, the Court with address each of the alleged "acts of retaliation" in this section.

medical records to support a misconduct against Plaintiff (*id.*, PageID.20), and Defendant Sandborn refusing to return Plaintiff to Plaintiff's housing unit, work assignment, or religious group following Plaintiff's time in segregation (*id.*, PageID.21).   Plaintiff contends that he was informed that Defendants McNees, Kaliszewski, Keough, and Betcke were planning to retaliate against Plaintiff, but provides the Court with no details regarding the alleged retaliation plot.  (*Id.*, PageID.23–24.)  Plaintiff also alleges that Defendants Davids, Lafler, and Pattinson confiscated Plaintiff's television because of Plaintiff's prior complaints against staff. (*Id.*, PageID.30.)

Additionally, Plaintiff claims that Defendant Franz told Plaintiff that she issued Plaintiff a false misconduct as an act of retaliation in response to Plaintiff's complaints, (*id.*, PageID.23), and Defendant Hengesbach told Plaintiff that he was denying Plaintiff legal supplies to try to stop Plaintiff from filing any more complaints about staff and attempted to recruit another prisoner to run against Plaintiff for the "white block rep position" (*Id.*, PageID.26.)  Defendants Hengesbach, Oversmith, and Dunigan refused to waive a requirement that prisoner-representatives must be free from misconduct for five months, telling Plaintiff that they did not want Plaintiff to be in a position to file more complaints (*id.*, PageID.29), Defendant Newland performed a shakedown of Plaintiff, confiscated items of Plaintiff's property, and issued Plaintiff a false misconduct report at the direction of Defendants Dunigan and Hengesbach because of Plaintiff's complaints about staff (*id.*, PageID.26–27, 30), and Defendants Kerr, Hengesbach, Dunigan, Bonn and Davids transferred Plaintiff to

AMF, knowing that the transfer put Plaintiff in danger (*id.*, PageID.7, 32–33). Plaintiff also states that, when he reported to Defendant Hengesbach that his cell had been "flooded with urine and feces," Defendant Hengesbach refused to act based upon Plaintiff's prior complaints against staff.  (*Id.*, PageID.28.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).  Therefore, Plaintiff's allegations, if true, sufficiently support a finding that he was engaged in protected conduct for purposes of a retaliation claim. However, Plaintiff's allegation that Defendants McNees, Kaliszewski, Keough, and Betcke were planning to retaliate against him (*id.*, PageID.23–24) is insufficient to state a plausible First Amendment retaliation claim.  Plaintiff provides the Court with no *facts* to describe the alleged "plot" or details as to how Defendants McNees,

Kaliszewski, Keough, and Betcke intended to retaliate against Plaintiff.   Plaintiff instead appears to ask this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.   It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that Defendants McNees, Kaliszewski, Keough, and Betcke engaged in retaliation through this alleged plot.   *See Iqbal*, 556 U.S. at 679. Plaintiff has not met his initial burden.   Accordingly, any claim for First Amendment retaliation premised upon this alleged "plot" will be dismissed.

Examining Plaintiff's remaining allegations of retaliation, the Court finds that these allegations, taken as true, cannot be dismissed on screening.   The Court will therefore allow Plaintiff to proceed on his remaining claims of First Amendment retaliation against Defendants McNees, Kaliszewski, Franz, Newland, Wood, Lafler, Pattinson, Sikkema, Jones, Hengesbach, Oversmith, Bledsoe, Kerr, Dunigan, Bonn, and Davids.

### 2. Free Exercise and RLUIPA

Plaintiff alleges that, after being found not guilty of a misconduct, Defendant Sanborn refused to return Plaintiff to his housing unit, which did not allow Plaintiff access to the unit 4 Seventh Day Adventist religious groups.   (ECF No. 1, PageID.21.) The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I.   The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310

U.S. 296, 303 (1940).  Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right.  *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same).

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).  "[A] 'substantial burden' is a difficult threshold to cross."  *Id.* at 736.  "[A] 'substantial burden' must place more than an inconvenience on religious exercise."  *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).  A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult. . ." *Id.*

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim.  In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden

constitutes the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-1(a).  The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA.  The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions.  *Living Water*, 258 F. App'x at 733–34.  Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003))).  A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs."  *Living Water*, 258 F. App'x at 734.  Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious

exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761. Thus, under the First Amendment or RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened.

Plaintiff's First Amendment and RLUIPA claims are entirely conclusory. Plaintiff alleges only that he was not returned to unit 4 and, therefore, was unable to attend the "unit 4 Seventh Day Adventist religious groups." Plaintiff does not allege facts that would plausibly suggest that another religious group was not available, let alone that Defendants actions deprived Plaintiff of the "reasonable opportunity" to exercise a sincerely held religious belief. Plaintiff fails to allege the nature of his religious beliefs or to specify how Defendants actions, in moving him to a new unit, substantially burdened Plaintiff's ability to exercise those beliefs. As noted previously by the Court, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's First Amendment free exercise and RLUIPA claims are properly dismissed.

### 3.    Access to the Courts

Plaintiff claims that: (a) he was denied legal supplies on one occasion; (b) later that month, he was told that he could only receive supplies monthly; and (c) other legal supplies and materials were confiscated. The Court will liberally construe Plaintiff's complaint as raising claims for interference with Plaintiff's First Amendment right to access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992).  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391.  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff fails to provide the Court with any facts whatsoever to describe any underlying cause of action frustrated by Defendants' actions.  Plaintiff alleges that he was denied access to the courts when he was denied legal supplies; however, Plaintiff does not elaborate as to Plaintiff's attempted legal actions and claims or the alleged harm that resulted from Plaintiff's inability to obtain legal supplies. Accordingly, Plaintiff's allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  The Court will therefore dismiss Plaintiff's claims for interference with his First Amendment right to access to the Courts.

### 4. Interference with Outgoing Mail

Plaintiff alleges that Defendant Hengesbach improperly confiscated Plaintiff's outgoing mail that was addressed to outside public officials.  (ECF No. 1, PageID.30.) "A prisoner's right to receive mail is protected by the First Amendment." *Knop*, 977 F.2d at 1012 (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

At this stage, the Court will allow Plaintiff to proceed with his First Amendment claim against Defendant Hengesbach premised upon Defendant Hengesbach's alleged confiscation of Plaintiff's outgoing mail.

### D.    Eighth Amendment Claims

### 1.    Conditions of Confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The

deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).   Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).   Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).   The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.   To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*,

511 U.S. at 834.   Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.   "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.   "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.   "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Liberally construed, the Court finds that Plaintiff has alleged three Eighth Amendment claims properly characterized as alleging unconstitutional conditions of confinement: placement in segregation with a wool blanket rather than a cotton blanket, exposure to urine and feces in a flooded cell, and exposure to black water in the clogged sink and toilet.   Each of Plaintiff's claims will be addressed in turn.

Plaintiff first alleges that Plaintiff was placed in segregation with a wool blanket instead of his usual cotton blanket.   (ECF No. 1, PageID.20, 21.)   Plaintiff reports that he informed Defendant Jones that he was allergic to wool, with a medical detail for the past 30 years, but that Defendant Jones refused to provide Plaintiff with cotton blankets.   (*Id.*, PageID.20.)   Plaintiff reports that he had an allergic reaction that "made [Plaintiff's] throat swell almost entirely closed." (*Id.*)   Taking Plaintiff's allegations as true, the Court finds that Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against Defendant Jones.

28

Second, Plaintiff claims that he was forced to stay in a cell flooded with urine and feces without cleaning supplies or protective equipment for several days and with the understanding that the prisoner in the cell causing the flooding may be HIV or Hepatitis C-positive.  (ECF No. 1, PageID.28.)  Plaintiff reported the condition of his cell to Defendant Hengesbach, but Defendant Hengesbach only responded, "If you have to clean up shit water all weekend you won't have time to file anymore [sic] complaints and that's good for us."  (*Id.*)  At this early stage of the litigation, and given Defendant Hengesbach's alleged response, the Court will allow Plaintiff to proceed on this Eighth Amendment claim.

Finally, Plaintiff reports that he woke up to find "black water in his toilet and sink that would not go down" and was given a plunger and cleaning supplies to correct the problem.  (ECF No. 1, PageID.29.)  "Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount."  *Lamb v. Howe*, 677 Fed. Appx. 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration."  (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).  "It is well-established that the presence of some unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme."  *Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL

29

3725988, at *3 (S.D. Ohio Aug. 23, 2021); The temporary exposure, even to human waste, is not sufficiently serious so as to state an Eighth Amendment claim, particularly where the plaintiff does not allege to have been injured as a result. *See Lamb*, 677 Fed. Appx. at 209-10 (discussing that inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding that there was no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but suffered no physical harm); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (finding that deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours).

Here, while Plaintiff alleges that his sink and toilet were clogged with "black water," Plaintiff also acknowledges that he was given the tools and supplies to correct the problem and does not claim to have been injured as a result.  Moreover, Plaintiff does not allege that any individual Defendant was deliberately indifferent to the state of Plaintiff's cell on this occasion.  Therefore, no matter how liberally construed, Plaintiff's allegations fail to state an Eighth Amendment claim premised upon the black water found in Plaintiff's clogged sink and toilet.  The Court will therefore dismiss Plaintiff's third claim for unconstitutional conditions of confinement.

## 2.  Failure to Provide Medical Care

Plaintiff asserts that Defendants Jones refused to provide Plaintiff with medical care for a possible broken toe.  With its prohibition against cruel and unusual punishment, the Eighth Amendment obligates prison authorities to provide medical

care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need [] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would

deem the need for medical attention clear.  *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer*, 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  To prove a defendant's subjective knowledge, "[a] plaintiff

32

may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

Plaintiff describes only that he had a "possible broken toe."  Based upon this limited allegation, the Court finds it unlikely that Plaintiff has satisfied the objective prong of the deliberate indifference test.  *See Bemer v. Corr. Med. Servs., Inc.*, No. 10-cv-12228, 2012 WL 511599, at *3 (E.D. Mich. Feb. 16, 2012) (finding a prisoner's broken toe was not a sufficiently obvious injury within the meaning of an Eighth Amendment violation where prison staff would have needed x-rays to determine the extent of the injury).  However, even assuming without deciding that Plaintiff has sufficiently alleged the existence of an objectively serious medical condition, Plaintiff has not provided this Court with sufficient facts to plausibly suggest Defendant Jones was deliberately indifferent to the same.  Plaintiff has not provided this Court with any information to suggest that Defendant Jones was personally aware of the extent of Plaintiff's injury and that a substantial risk of serious harm existed in failing to provide care.  It is Plaintiff's obligation at this stage to plead sufficient facts to state a claim plausible on its face.  *See Twombly*, 550 U.S. at 570.  Plaintiff has not met that minimal burden.  Accordingly, the Court will dismiss Plaintiff's Eighth Amendment medical care claim.

### 3.    Failure to Protect

Plaintiff alleges that Defendant McNees paid Prisoner Beck (a known gang leader) to attack Plaintiff.  (ECF No. 1, PageID.16.)  Plaintiff also alleges that

Defendant Bennett assigned Defendants McNees and Kaliszewski to work together in unit 5, where Plaintiff was housed, and that Plaintiff informed Defendant Davids of this issue, but he did not correct the problem.  (*Id.*, PageID.23.)  Finally, Plaintiff alleges that Defendants Kerr, Hengesbach, Dunigan, Bonn and Davids transferred Plaintiff to AMF, knowing that the transfer put Plaintiff in danger.  (*Id.*, PageID.7, 32–33).

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment.  *Farmer*, 511 U.S. at 833.  Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care.  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.

To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff.  *Farmer,* 511 U.S. at 834; *Helling*, 509 U.S. at 32; *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995).  Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.  A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to Plaintiff.  Accordingly, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant McNees for paying another prisoner to attack Plaintiff and against Defendants Kerr, Hengesbach, Dunigan, Bonn and Davids related to their decision to transfer Plaintiff to AMF.

However, Plaintiff has not provided the Court with sufficient facts that would plausibly suggest that Defendant Bennett, in transferring Defendants McNees and Kaliszewski to unit 5, and Defendant Davids, in not doing anything about the transfer, were subjectively aware that Defendants McNees and Kaliszewski posed an excessive risk of serious harm to Plaintiff such that it could be said that Defendants Bennett and Davids acted with deliberate indifference.  There is nothing to indicate that Defendants Bennett and Davids were aware that Defendants McNees and

35

Kaliszewski had threatened to harm Plaintiff.  Moreover, Plaintiff alleges only that Defendant Davids failed to act.  However, as described in detail above, government officials like Defendant Davids cannot be held liable for their actions of their subordinates, and supervisory liability cannot be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.  For each of these reasons, Plaintiff's allegations do not give rise to an Eighth Amendment claim for failure to protect against Defendants Bennett and Davids premised upon the assignment of Defendants McNees and Kaliszewski to unit 5.

### E.      Fourteenth Amendment Due Process Claims

#### 1.      Deprivation of Property

Plaintiff alleges that Defendants deprived Plaintiff of his personal property. Specifically, Plaintiff claims that Defendants Wood and Bledsoe deprived Plaintiff of his eyeglasses and returned them badly scratched, Defendant Wood damaged Plaintiff's television and typewriter, Defendants Davids, Lafler, and Pattison confiscated Plaintiff's television, Defendant Newland confiscated items of Plaintiff's personal property and a "legal file," and Defendant Hengesbach confiscated items of Plaintiff's mail.[4]

---

[4] Confiscation of mail involves two different types of deprivation: deprivation of property and deprivation of the prisoner's First Amendment liberty interest in sending and receiving mail. *See Procunier*, 416 U.S. at 428 ("The interests of prisoners and their correspondents in uncensored communications by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest . . . ."). Although *Parratt* dealt specifically with the deprivation of a property interest, the Sixth Circuit has applied the doctrine to deprivations of liberty interests, *see, e.g.*, *Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (concluding that "[t]hough *Parratt v. Taylor* concerned the loss of property, we see nothing in its underlying rationale which would require a different treatment of due process claims for deprivation of liberty") (en banc), and

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).  With regard to Plaintiff's due process claims related to his personal property described above, however, his claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, have "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to

---

specifically to a due process claim regarding deprivation of a prisoner's liberty interest in his mail, *Calhoun v. Morris*, No. 22-1795, 2023 WL 5009669, at *3 (6th Cir. Jul. 31, 2023).

satisfy the requirements of due process," *id*. at 544.  If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law."  *Id.* at 537.  This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. at 530–36.  Plaintiff must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate.  Plaintiff has state post-deprivation remedies available to him.  For example, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers."  Mich. Comp. Laws § 600.6419(1)(a).  The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of his property.

## 2. Misconduct Charges

Plaintiff alleges that Defendants issued him numerous falsified misconduct reports, which were either dismissed or for which Plaintiff was ultimately found not

guilty, and that Defendants altered Plaintiff's records in support of those misconduct charges.   Plaintiff also appears to allege that Defendants issued Plaintiff other misconduct reports without specifying their disposition. (*See* ECF No. 1, PageID.29) (describing that Plaintiff had not been free of misconducts for five months).   Plaintiff contends that these actions violated Plaintiff's Fourteenth Amendment right to procedural due process.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff's complaint and exhibits clearly indicate that, of the misconducts described and attached, Plaintiff was found not guilty and/or that Plaintiff's misconduct tickets were dismissed.  There is "no constitutional right to be free from false accusations of misconduct."  *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003).  "Due process of law requires only that the person have the opportunity to

convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed"). Because Plaintiff's allegations show that he had such an opportunity, and that ultimately, he was found not guilty of the misconduct charges attached to Plaintiff's complaint, any intended procedural due process claims based upon those misconduct charges will be dismissed.

Even if Plaintiff had been found guilty of every misconduct charge, he still could not provide the Court with any facts that would plausibly implicate a protected liberty interest. First, such a guilty finding would not affect the duration of Plaintiff's sentence. The MDOC reward for serving time "misconduct free" has changed significantly over the last 25 years. For years inmates could earn "good time credits." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.33. For prisoners who committed crimes on or after April 1 of 1987, however, "good time credits" were discontinued and replaced by "disciplinary credits." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.33. Then, for prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or

after December 15, 2000, for all other crimes, "disciplinary credits" were replaced by "disciplinary time." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.34.   In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id*. at 440.  Plaintiff committed his crimes after April 1, 1987, and before December 15, 1998; therefore, any disciplinary finding of guilt would not affect his sentence.

Second, the consequences of a disciplinary finding of guilt would not rise to the level of atypical and significant hardships.  Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The Supreme Court has held that placement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Thus, it is considered atypical and significant only in "extreme circumstances."  *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an

"atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g., Baker*, 155 F.3d at 812–23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). Put simply, any penalty Plaintiff might have

faced because of the misconduct reports would not rise to the level of an atypical and significant hardship.

For all of these reasons, the Court finds that, to the extent pled, Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim with regard to any misconduct charges. Accordingly, the Court will dismiss Plaintiff's due process claims stemming from the issuance or handling of misconduct reports.

### F.    Fourteenth Amendment Substantive Due Process Claims

Plaintiff indicates that he intends to bring a claim for violation of his Fourteenth Amendment substantive due process rights. He identifies 26 instances of misconduct by Defendants that purportedly run afoul of the substantive due process guarantee. (Compl., ECF No. 1, PageID.46–48 ¶ 89.) Each of those instances of misconduct falls directly under one of the constitutional violations addressed above. "Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this context, Plaintiff § 1983 claims are governed by the specific constitutional amendments discussed in detail above. Therefore, the Court will dismiss Plaintiff's Fourteenth Amendment substantive due process claims.

### G.    Section 1983 Civil Conspiracy Claims

Plaintiff alleges that "[D]efendants (all of them) conspired to commit these acts of retaliation because of the complaints [P]laintiff filed on [D]efendants McNees and Kaliszewski in December 2022."  (ECF No. 1, PageID.63.)  The Court construes this as a civil conspiracy claim under § 1983.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.  *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff alleges in a conclusory manner that all Defendants conspired to violate Plaintiff's First Amendment right to be free from unlawful retaliation.  However, Plaintiff's allegations as to "all Defendants" are wholly conclusory.  For the most part, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff,

describe discrete occurrences involving Defendants.  Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that Defendants took allegedly adverse actions against him over a months-long period of time.  As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556–57.  Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior."  *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).

However, even as to those instances in which Plaintiff describes an agreement between Defendants to carry out retaliatory orders, Plaintiff's claims are barred by the intracorporate conspiracy doctrine.  The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy."  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991).  The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3).  *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510).  In *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985.  As a result, unless members of the same collective entity (such as the

45

MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019) (same).

Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location.  Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employments.  The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840.  "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)).  In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992).  Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties.  Plaintiff therefore does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment.  Consequently, Plaintiff's conspiracy claims under § 1983 will be dismissed.

## H.     Claims Regarding Violations of State Law

Plaintiff also alleges that Defendants violated his rights under Michigan state law and MDOC policy. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or the MDOC's policies. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants committed state law torts or violated the MDOC's policies fail to state a claim under § 1983.

To the extent that Plaintiff requests that this Court exercise supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, given that the Court will dismiss all federal claims against Defendants Betke, Keough, Morgan, Bennett, Henry, and Salinas, the balance of interests weighs against the exercise of supplemental jurisdiction and Plaintiff's state law claims against Defendants Betke, Keough, Morgan, Bennett, Henry, and Salinas will be dismissed without prejudice to Plaintiff's ability to raise those claims in the state courts. However, the Court will allow Plaintiff to proceed with his supplemental state law claims against the remaining Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Betke, Keough, Morgan, Bennett, Henry, Salinas, and Cassell will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's state law claims against these Defendants will be dismissed without prejudice to Plaintiff's ability to raise his claims in the state courts.  The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: all official capacity claims for monetary damages, First Amendment claims for violation of Plaintiff's right to free exercise of religion and access to the Courts, First Amendment retaliation claims premised upon a March 2023, plot to retaliate against Plaintiff, violation of the Religious Land Use and Institutionalized Person Act (RLUIPA), Eighth Amendment claim of unconstitutional conditions of confinement regarding "black water" in Plaintiff's toilet and sink, the denial of medical care, and for failure to protect premised upon the decision to assign Defendants McNees and Kaliszewski to unit 5, Fourteenth Amendment procedural and substantive due process claims, and Plaintiff's claims of conspiracy.  The following claims remain in the case: First Amendment retaliation claims against Defendants McNees, Kaliszewski, Franz, Newland, Wood, Jones, Bledsoe, Sikkema, Sandborn, Lafler, Pattinson, Hengesbach, Oversmith, Dunnigan, Kerr, Bonn, and Davids, First Amendment claim for interference with Plaintiff's outgoing mail against Defendant Hengesbach, Eighth Amendment claim for failure to protect against Defendant McNees for paying another prisoner to attack Plaintiff and against Defendants Kerr, Hengesbach, Dunigan,

Bonn and Davids related to their decision to transfer Plaintiff to AMF, and supplemental state law claims against these remaining Defendants.

An order consistent with this opinion will be entered.


Dated:  September 12, 2024                    /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge